## Livingston v. Fulton.

*Real estate—Adverse possession—Tenants in common—Tenant at sufferance—Evidence—Sufficiency of proof—Length of possession.*

1. Adverse possession of real property cannot be gained by any one of the heirs of a decedent, all of whom held the property as tenants in common.

2. Adverse possession of land for less than twenty-one years does not create mature title.

3. Where the widow of a life-tenant continues in possession of real estate after his death, she is a tenant at sufferance and does not hold adversely to the real owner.

4. The uncorroborated testimony of a claimant that she had cut grass on the property claimed, without fixing the time, is not sufficient proof of open, hostile and notorious possession for twenty-one years upon which to found claim of title to real estate by adverse possession.

Ejectment. Motion for judgment *n. o. v.* C. P. Dauphin Co., Sept. T., 1922, No. 486.

*Thomas D. Caldwell,* for plaintiff.

*Harvey E. Knupp* and *P. W. Fetterolf,* for defendant.

POTTER, P. J., 17th judicial district, specially presiding, April 18, 1924.— This is an action of ejectment, brought by the plaintiff against the defendant for the recovery of a small wedge-shaped piece of ground, situate in the town of Rockville, Susquehanna Township, Dauphin County, the same being one and eight-tenths feet wide at one end, coming to a point at the other end, and extending in length from the "Pennsylvania Canal" to a point near the State Highway. The trial of the case resulted in a verdict for the plaintiff. A motion was then made for judgment *non obstante veredicto,* and it is this motion we have before us for disposition.

The plaintiff set up two grounds upon which she based her suit, to wit: (1) her paper title; and (2) adverse possession. During the course of the trial it was discovered that her claim to this strip of land was not valid so far as concerns her paper title. It was agreed by counsel for both sides during the trial that, so far as relates to the paper title of both these contending parties, the boundary-line between their respective lots was one and the same. We, therefore, withdrew that branch of the case from the consideration of the jury for the very good reason that there was no dispute between them.

There was, however, some slight testimony on the question of ownership by adverse possession, which, without any time to consider, we decided to leave to the jury. Since the trial, and after mature reflection, we are fully convinced that there was not sufficient evidence to justify sending the case to the jury, as well as no law for so doing, and much as the sympathy of the court may go out to this plaintiff, who is an old lady in the declining years of life, we feel that we have a legal duty to perform in rectifying any error we may have made in submitting the case to the jury.

The small wedge-shaped piece of land embraced in this contention lies between the two lots of land now owned by the plaintiff and by the defendant, the defendant's lot being north of that of the plaintiff. These two lots, with others, were formerly owned by Jacob Livingston. At his death the said lots passed to his children and legal heirs, of whom Kirkwood Livingston and Elizabeth Free were two. On Feb. 29, 1892, the heirs of Jacob Livingston, by writing duly executed, acknowledged and recorded, constituted Frederick M. Ott as their true and lawful attorney to sell and convey these said lots, *inter alia,* to certain of the heirs of said decedent, as set out in their said letter

of attorney or agreement, by the terms of which Kirkwood Livingston was to have the lot now occupied and owned by the plaintiff, and Elizabeth Free was to have the lot now owned and occupied by the defendant.

On June 30, 1903, by virtue of the powers and authority in said letter of attorney or agreement contained, the title to the said two lots was lawfully vested in Kirkwood Livingston and in Elizabeth Free respectively. From the time of the death of Jacob Livingston up to June 30, 1903, the heirs of the said decedent held these lots as tenants in common, during which time there could be no title gained by any of them by adverse possession, as one of them held for all of them. Elizabeth Free had the recorded title to the lot now owned by the defendant from June 30, 1903, up to the time of her death on Dec. 28, 1911, and at her death she left her will, whereby she gave to her brother, Kirkwood Livingston, a life estate in the said lot now owned by the defendant, which he held up to the time of his death in September, 1914. From the time of his death on up to the present time, his widow, Ellen D. Livingston, the plaintiff, continued to occupy the lot he owned as his devisee, and up to several years ago, she also occupied the lot now owned by the defendant, when he became lawfully possessed of the same by purchase.

As we have hereinbefore said, when the heirs of Jacob Livingston owned these lots as tenants in common, the statute relative to adverse possession could not run, which brings us up to June 30, 1903.

From June 30, 1903, up to the time of the institution of this suit on Nov. 9, 1922, is short of the twenty-one-year period required for a title by adverse possession to ripen into maturity; but even during a part of the time the statute could not run. From the death of Elizabeth Free up to the death of Kirkwood Livingston he held a life estate under the will of Elizabeth Free in the lot now owned by the defendant. After his death his wife, the plaintiff, continued to hold the said lot as a tenant at sufferance, where the statute again cannot run. She simply held the said lot as for, and in place of, her husband, and if the statute could not run in his favor, it equally could not run in hers.

In the case of Bannon v. Brandon, 34 Pa. 263, we have the law respecting this question as that the widow of a tenant for life, who continues in possession, without any contract between herself and the owner of the land, holds in subordination to his title, and not adversely; she is at least a tenant at sufferance. And this precisely fits the case at bar. Kirkwood Livingston was a life-tenant, and after his death his wife, the plaintiff in this suit, continued to hold the lot as a tenant at sufferance and not adversely, and she held the lot in this manner up until a few years ago. Under these facts and the law as applied to them, how can adverse possession be set up?

Before the statute begins to run in favor of such an occupant, the privity between her and the real owner must have been severed by some unequivocal act. To the same effect is the case of Hover v. Hills, 273 Pa. 580.

The plaintiff testified that she lived there about fifty years, that she had used this strip of ground, had cut grass on it, but the time when this was done, or since when it was done, is not fixed. When she sets up title by adverse possession, the burden rests on her to prove it. Her occupancy of the land must be open, hostile and notorious for a period of at least twenty-one years. She has not proven this. She must satisfy the jury by her testimony that she comes within the provisions of the law: Griffin v. Mulley, 167 Pa. 339. And during the fifty years she says she lived there she was using this land as the wife of her husband, who had only a life estate in it, and

4 D. & C.

after his death she held it as only a tenant at sufferance, which continued up to within a few years ago, when it was sold, and in these cases the statute will not run.

Testimony of this kind is too vague and uncertain on which to base a title to real estate, and especially so when it is uncorroborated. The acts of the plaintiff on this land fall far short of the legal requirements in order to set up a title by adverse possession.

We must, therefore, find that the plaintiff has failed to establish her claim by adverse possession (1) because she was a tenant at sufferance; and (2) because the acts relied upon by her are not sufficient in law to substantiate her claim; and (3) because her occupancy, even from June 30, 1903, to the time of the bringing of this suit, falls short of the statutory period, by reason of which we must sustain the motion.

And now, to wit, April 18, 1924, in accordance with the views herein expressed, the motion is sustained, and it is directed that the verdict for the plaintiff be set aside and judgment *non obstante veredicto* be entered for the defendant upon compliance with the law and the rules of practice of the Court of Dauphin County.                    From Charles P. Ulrich, Selins Grove, Pa.