# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 27, 2012 Session

## CASS RYE & ASSOCIATES, INC. v. EDWARD COLEMAN, ET AL.

**Appeal from the Chancery Court for Houston County**
**No. 5143     Robert E. Burch, Chancellor**

**No. M2011-01738-COA-R3-CV - Filed September 13, 2012**

Plaintiff in suit seeking to have court declare boundaries of fifteen acre tract of land appeals the declaration of boundaries and award of the tract to Defendants, adjoining landowners. Defendants appeal finding that Plaintiff adversely possessed a portion of the fifteen acre tract. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Robert Isaiah Thomason, Jr., Waverly, Tennessee, for the Appellant, Cass Rye & Associates, Inc.

Mark Allen Rassas and Julia Palasek North, Clarksville, Tennessee, for the Appellees, Edward Coleman, Margaret Mann, Joyce Coleman, Tim Coleman, and Vickie Reedy.

## OPINION

This lawsuit involves the location of a fifteen acre tract of land in Houston County. Cass Rye & Associates, Inc. ("Plaintiff") owns a 240 acre tract located to the south of a 1200 acre tract owned by Defendants, who are descendants of the late Lila Coleman; the fifteen acre tract is located within the boundaries of the 1440 acres. The question on appeal is whether the fifteen acre tract lies to the north or south of a certain line, which the parties agree is one of the boundary lines of the fifteen acre tract. Plaintiff asserts that the tract lies to the north of the line while Defendants assert that the tract lies to the south of the line.

Plaintiff filed suit pursuant to Tenn. Code Ann. § 16-11-106 to resolve the dispute and for slander of title. Defendants answered, asserting that they were the rightful owners of the tract, and that they and their predecessors in title had paid state and county taxes on the tract for more than twenty years; by counterclaim, they sought to have the court fix the location of the boundary line and quiet their title to the disputed acreage.

Following a trial, the court issued its memorandum opinion. The court found that Defendants had paid taxes on the tract continuously since 1970 and that Plaintiff paid no taxes; on the basis of these findings, the court held that Defendants were entitled to a *prima facie* presumption of ownership pursuant to Tenn. Code Ann. § 28-2-109 and that Plaintiff was barred from bringing the action "for ownership of property" by Tenn. Code Ann. § 28-2-110. The trial court concluded that "[o]wnership by deed and description is in Defendants." The court addressed and rejected Plaintiff's alternative claim of ownership of the tract by adverse possession; however, the court found that Plaintiff adversely possessed a hayfield 800 feet by 50 feet within the fifteen acre tract. In a judgment subsequently entered, the court decreed that the fifteen acre tract lay to the south of the boundary line agreed upon by the parties.

Plaintiff filed a motion requesting the court to alter or amend the judgment or to make additional findings of fact. Following a hearing, the court reversed its previous holding regarding the presumption of ownership in favor of Defendants, and held that Defendants "have not had their deed, conveyance, grant, or other assurance of title recorded in the register's office for more than twenty years" and that such a recording was a requirement under Tenn. Code Ann. § 28-2-109. The court held, however, that even without the statutory presumption, Defendants had the superior claim to the fifteen acre tract. The court affirmed the judgment in all other respects.

Plaintiff appeals, stating the following issues for our review:

I. Whether the trial court erred in finding that the location of the 15 acre tract was along and upon the most western north boundary of Plaintiff's 240 acre tract and extended south into Plaintiff's 240 acre tract.

II. Assuming that the trial court was correct in the location of the 15 acre tract, whether the trial court erred in failing to find that Plaintiff was the true owner of the 15 acre tract under the doctrine of constructive possession because of Plaintiff's actual and adverse possession of the field within the 15 acre tract under color of title and Defendants' lack of possession of any part of the 15 acre tract.

III. Whether the trial court erred in finding that Plaintiff could not prevail on its original complaint under Tenn. Code Ann. § 28-2-110(a).

In addition to opposing Plaintiff's issues, Defendants assert that the court erred in determining that Plaintiff acquired title to the hayfield under the doctrine of adverse possession and in failing to acknowledge that they were entitled to the presumption of ownership of the fifteen acre tract pursuant to Tenn. Code Ann. § 28-2-109.

## II. Standard of Review

Review of the trial court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 199 S.W.3d 632, 635 (Tenn. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Review of the trial court's conclusions of law is *de novo* with no presumption afforded to the trial court's decision. *See Kaplan*, 199 S.W.3d at 635.

## III. Discussion

### A.  Location of the Fifteen Acre Tract and the Boundary Line

The question of where a boundary lies is generally a question of fact. *Ezell v. Duncan*, No. M2003-00081-COA-R3-CV, 2004 WL 2916139, at *5 (Tenn. Ct. App. Dec. 15, 2004). In boundary dispute cases, where the trial court, as the finder of fact, is often required to choose between competing surveys, the usual standard of review applies. *See Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999); *see also Stovall v. Bagsby*, No. M2002-01901-COA-R3-CV, 2003 WL 22768677, at *2 (Tenn. Ct. App. Nov. 24, 2003) (listing cases where trial judge chose between competing surveys); *Edwards v. Heckmann*, No. E2002-02292-COA-R3-CV, 2003 WL 21486987, at *4-5 (Tenn. Ct. App. June 25, 2003) (where proof was a battle of the experts, i.e., surveyors, the reviewing court applied Tenn. R. App. P. 13(d)) and found the evidence did not preponderate against the trial court's findings).

There were four surveys introduced at trial: (1) the Quillen survey introduced through the testimony of Cass Rye; (2) the Reasons survey introduced through the testimony of Mr. Rye; (3) the Wilson survey introduced through the testimony of Keith Wilson; and (4) the McBride survey introduced by the testimony of Darrel McBride.

Cass Rye, president of Plaintiff, testified that he purchased the 240 acre tract relying on a 1972 survey conducted by Albert Quillen; Mr. Rye had no personal knowledge regarding how the survey was prepared and testified that the survey did not have a surveyor's seal affixed to it. Following the purchase he hired Tony Reasons to survey the property; he

testified that the Reasons survey placed the fifteen acre tract to the north of the line Plaintiff and Defendants agree is a boundary line of the fifteen acre tract.[1]  Mr. Rye testified further that he considered the Reasons survey to be incomplete, and that, as a result, he hired Keith Wilson to conduct another survey of the 240 acres.

Mr. Wilson testified that Mr. Rye initially engaged him to survey a portion of the 240 acre tract which was not a part of the fifteen acre tract and which was not completed by Mr. Reasons.  In the course of performing the work, he was asked by both Mr. Rye and Edward Coleman, son of Lila Coleman and one of the Defendants, to locate the boundary line of the fifteen acre tract.  He testified that he surveyed the property and the fifteen acre tract using deeds, tax maps, and natural and artificial markers on the land.  Mr. Wilson testified that the fifteen acre tract was originally part of the "Old Cooley Mill Place" and that in a 1928 deed, the fifteen acres was conveyed from W.W. Patterson and John Jones to John Sturdivant; in 1949 it was conveyed to P.B. Irwin; in 1955 to I.E. Averitt; and in 1963 to Lila Coleman.  Mr. Wilson testified that the property description in each deed included calls[2] for the fifteen acre tract that began "on the northeast corner" and proceeded north, but that he did not follow the deeds' exact property descriptions but placed the fifteen acre tract to the south of the line rather than the north.  Further, he testified that the southern line of the 1200 acre Coleman tract was a "well established line," that W.W. Patterson never owned property to the north of the line, and that "[W.W. Patterson's] intent appeared to [Mr. Wilson] to convey property out of [the] northeast corner of a particular size and shape."  He concluded by opining that the location of the fifteen acre tract should be determined by reversing the calls in the original 1928 deed and placing the tract to the south rather than to the north.[3]

Darrel McBride, the fourth surveyor, testified that Mr. Rye hired him to "locate some property lines" on Plaintiff's property and that he only surveyed the fifteen acre tract; in so doing, he used natural and artificial markers on the land, deed evidence, and prior surveys. The McBride survey placed the fifteen acre tract to the north of the agreed line.

With respect to the derivation of the fifteen acre tract, the court made specific findings of fact, stating:

---

[1] The Reasons survey shows the line which the parties agree is a boundary line of the fifteen acre tract to also be a property line between Plaintiff's and Defendants' property.

[2] Calls, also known as "locative calls," are, "in land descriptions, specific descriptions that fix the boundaries of the land.  Locative calls may be marks of location, landmarks, or other physical objects." *Blacks Law Dictionary* (9th  ed. 2009).

[3] Mr. Wilson also testified that the Quillen survey did not indicate the identity of the neighboring property owners and did not actually demarcate the disputed area.

Defendants' 1200 acre tract is part of a larger tract which was owned by their mother, Lila Coleman, who is now deceased. The late Ms. Coleman was conveyed the land by her father, I.E. Averitt, in 1963. Mr. Averitt acquired the property by deed in 1943.

The portion of Plaintiff's 240 acre tract which is involved in this controversy consists of 61 acres which was part of the Old Cooley Mill Place which originally comprised some 180 acres. The original 180 acre tract was sold by Thomas Patterson to W.W. Patterson in 1908. W.W. Patterson sold this particular 61 acre tract to A.H. Haney, who deeded it to P.B. Irwin in 1936. A confusing factor presents itself in that W.W. Patterson sold all 180 acres of the Cooley Mill Place "except a small strip sold to John Sturivan (sic), where Oguinn (sic) now lives and a school house lot" to John Jones in 1919. Whatever impairment this may have on the title to the 61 acre tract is not before the Court. This question is avoided because the 15 acre tract was originally sold by W.W. Patterson and John Jones to John Sturdivant in 1928. . . . [T]he title to the Cooley Mill Place was in either W.W. Patterson OR John Jones, both of whom signed the conveyance of the 15 acres to John Sturdivant.

The 15 acres was then sold by Sturdivant to P.B. Irwin in 1949 and by P.B. Irwin to I.E. Averitt in 1955. In 1963, I.E. Averitt conveyed the 15 acre tract to Lila Coleman.

Plaintiff contends that the trial court should have determined that the fifteen acre tract falls to the north of the agreed line, rather than to the south, and that the trial court erred by inverting the calls on the deed as recommended by Mr. Wilson in his testimony and survey. Further, Plaintiff contends that the Quillen survey of Plaintiff's 240 acres supports locating the fifteen acre tract to the north. Plaintiff also argues that facts, such as the lack of physical markers to the south, the location of the chert pit, the condition of stumps on the property, and the harvesting of hay in the disputed area by Plaintiff's predecessors in interest, support locating the fifteen acre tract to the north of the established line.

With respect to the issues raised by Plaintiff, the trial court found that the physical evidence of boundary lines on the property was "not helpful," and that, other than evidence related to the agreed line, "no other credible evidence of old boundaries of the other lines [was] introduced." The trial court made thorough findings of fact regarding each of the issues Plaintiff raises with respect to the location of the tract and specifically addressed Plaintiff's argument regarding evidence that the tract should lie north of the established line:

Plaintiff submits that the distances in the old Cooley Mill Place deeds require the line between the 1200 acre tract . . . to be much farther north than the established line. The Court does not find such an argument persuasive. Reliance upon courses and distances without established landmarks is perilous at best. No evidence of an old line was found in the area suggested by Plaintiff. Other evidence establishes that the actual circumstances are otherwise.

The evidence as to the location of the tract included the succession of deeds conveying the fifteen acre tract as well as numerous surveys and the court's determination that the tract lies to the south of the agreed line is supported by the evidence, particularly the survey and testimony of Mr. Wilson.[4] After reviewing the record and applying the appropriate standard of review, we conclude that, while Plaintiff presented evidence which is contrary to the court's location of the tract, the evidence does not preponderate against the trial court's placement of the tract.

## B. Adverse Possession of the Hayfield

After rejecting Plaintiff's claim of adverse possession of the fifteen acre tract, the court held that Plaintiff adversely possessed the hayfield located within the fifteen acre tract. Defendants contend that the court erred in this regard, asserting that there were gaps in Plaintiff's possession of the field, such that the possession was not continuous for the entire prescriptive period, that the cultivation of hay was an "occasional use" insufficient for a finding of adverse possession, and that Plaintiff's evidence was not clear and convincing.

To establish adverse possession, a claimant must prove the possession was exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005). A claimant "must use the property in a manner consistent with its nature and purpose and in such a way as to give notice to the rightful owner that another is asserting dominion over his property." *Wilson*, 195 S.W.3d at 666. In Tennessee, a claim of adverse possession under common law requires "'that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed.'" *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 376–77 (Tenn. 2007) (quoting *Ferguson v. Prince*, 190 S.W. 548, 552 (Tenn. 1916). Bearing the burden of proof, the claimant must demonstrate the requisite elements of adverse possession by clear and convincing evidence. *Id.* at 377; *Wilson*, 195 S.W.3d at 666. "Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the

---

[4] A further finding in the Memorandum Opinion issued in response to Plaintiff's Motion to Alter or Amend was that the Quillen survey did not include the fifteen acre tract within Plaintiff's 240 acre tract.

conclusions to be drawn from the evidence." *Wilson*, 195 S.W.3d at 666; *see also Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn.1992). Adverse possession is a question of fact. *Cumulus Broad., Inc.*, 226 S.W.3d at 377.

In holding that Plaintiff adversely possessed the hayfield within the fifteen acre tract, the court found:

> Plaintiff's predecessors in title exercised complete dominion and control over the field consistent with its character. Their possession was exclusive, actual, adverse, continuous, open and notorious for the entire prescriptive period. Defendants should have known of this activity but took no action inconsistent with Plaintiff's ownership of the property. Plaintiff has gained ownership of the field through adverse possession.

In making this determination the court stated, "The twenty year period upon which the Court bases its finding is that twenty year period next preceding the filing of this action, i.e., 1977 to 1998."[5] The trial court found that Plaintiff met each of the elements of adverse possession with respect to the hayfield for the entire prescriptive period.

Plaintiff presented the testimony of five individuals with knowledge of use of the hayfield over the past forty years: Melton Rye, Richard Cook, Eugene Clark, Artie Tanner, and Jeff Smith. Melton Rye, father of Cass Rye, testified that he saw P.B. Irwin, Plaintiff's predecessor in title, harvesting hay out of the hayfield in 1963 or 1964. Richard Cook, a former employee of P.B. Irwin, testified that he harvested hay out of the hayfield beginning in 1964 and concluding in 1967 or 1968. Eugene Clark testified that he baled hay out of the hayfield for Mr. Irwin "every year" from 1966 until 1969. Artie Tanner testified that he rented the "P.B. Irwin place" from Earl Hodgen, Plaintiff's immediate predecessor in title. Mr. Tanner testified that while renting the property, he cut hay out of the hayfield each year for Mr. Hodgen from 1974 until 1989. Jeff Smith testified that he "cut the hay off of [the Earl Leroy Hodgen farm] since '83, '84." Mr. Smith testified that he cut hay off the Hodgen farm every year until 1996, and that the area he cut included the hayfield in question.

---

[5] The court's memorandum opinion states:

> The testimony establishes that Mr. Irwin and the others in the Cooley Mill Place chain of title cut hay off this field from 1964 through 1968; from 1984 to 1996 and that one of the owners of the tract rented this field to a tenant from 1974 through 1979.

The court's reference to 1979 appears to be a typographical error. The testimony established that Mr. Tanner rented the property from 1974 until 1989, not 1979.

Edward Coleman, one of the defendants, testified regarding the history of the hayfield's use. Mr. Coleman, the grandson of I.E. Averitt, testified that Mr. Averitt owned the land involved in the present dispute; Mr. Averitt owned the property to the north, and Mr. Irwin owned the property to the south. Mr. Coleman testified that the hayfield cut across the property of both landowners. Having observed the attitude of the men toward the hayfield in 1960, Mr. Coleman testified that, "Mr. Priestly had always just -- granddaddy and Priestly agreed to use [the hayfield]. You know, they wasn't worried about 2 acres or whatever, one using it and the other not getting anything. They were good friends." Mr. Coleman testified that Mr. Averitt made "gentlemen's agreements" with Mr. Irwin regarding the use of land on their common boundary. Mr. Coleman testified that Mr. Averitt died in 1976.

In its memorandum opinion, the trial court found that the twenty years between 1977 and 1998 served as the prescriptive period to establish Plaintiff's adverse possession of the hayfield. Upon our review of the record, we conclude that the evidence does not support a finding that Plaintiff cultivated hay in 1997 or 1998; however, the evidence does show that hay was cut continuously beginning after I.E. Averitt's death in 1976 until 1996.[6] This is sufficient to meet the twenty year prescriptive period.

Defendants next contend that the cutting of hay out of the hayfield was "occasional use," insufficient to support a finding of adverse possession. In this regard, the court found that, "[t]he farming activity on the field went on every year and the fact that hay had been cut therefrom was evident for several months of each year." In cases involving adverse possession, the question is not whether possession of the land was occasional, but rather whether the claimant has satisfied all of the elements of adverse possession. *See, e.g.*, *Cusick v. Cutshaw*, 237 S.W.2d 563, 566-67 (Tenn. Ct. App. 1948) ("Although there is evidence of the exercise from time to time . . . of possessory rights over portions of the land in dispute, even to the extent of erecting fences along or through the disputed area and of tending crops thereon, it does not clearly appear that such possession over any specific portion was 'actual, visible, continuous, notorious, exclusive and adverse.'"). The testimony shows that the field was used continuously in a manner consistent with its nature and purpose over the requisite period of time; the evidence does not preponderate against a finding that this element of adverse possession was met.

---

[6] According to Mr. Tanner's testimony, he cut hay out of the field beginning in 1974. The trial court, however, accorded weight to Defendants' proof that "I.E. Averitt would have never allowed an encroachment onto his property," and began the prescriptive period after Mr. Averitt's death in 1976. We do not find that the prescriptive period must begin after Mr. Averitt's death; we find, rather, that beginning the prescriptive period following Mr. Averitt's death satisfies the twenty year requirement.

## C. Constructive Possession

Based on the trial court's finding that Plaintiff adversely possessed the hayfield, Plaintiff contends that the trial court erred in not applying the doctrine of constructive possession to extend Plaintiff's ownership to the remainder of the fifteen acres. The trial court held that there was "insufficient evidence in the record to show that Plaintiff's possession of the field should be extended to the remainder of the [fifteen] acre tract under the doctrine of constructive possession."

Under Tennessee law, "'[w]here a portion of the land is in actual adverse possession, the party so holding has constructive possession of all the premises outside of his inclosure to the limits of his claim or assurance of title.'" *Foust v. Metcalf*, 338 S.W.3d 457, 465 (Tenn. Ct. App. 2010) (quoting *Green v. Cumberland Coal & Coke Co.*, 72 S.W.3d 459, 460 (Tenn. 1903)). Constructive adverse possession must be based on a claim "under an assurance or color of title purporting to convey an estate in fee." *Jackson v. Sappington*, W2002-02092-COA-R3-CV, 2003 WL 21756688, at *3 (Tenn. Ct. App. July 29, 2003). Color of title is "'something in writing which at face value, professes to pass title but which does not do it, either for want of title in the person making it or from the defective mode of the conveyance that is used.'" *Cumulus*, 226 S.W.3d at 366, n.3 (quoting 10 *Thompson on Real Property* § 87.12, at 145). Further, constructive adverse possession requires the land to be "wholly unoccupied" by the party with superior legal title. *Green*, 72 S.W. at 460.

Plaintiff contends that it has color of title to the fifteen acre tract because the Quillen survey locates the tract on Plaintiff's 240 acre tract and because the deeds in Plaintiff's chain of title, if not actually conveying the fifteen acres, purport to do so. Plaintiff also contends that Defendants did not occupy any part of the fifteen acre tract.

In locating the fifteen acre tract, the trial court found that the Quillen survey did not include the fifteen acres in Plaintiff's 240 acres. For the same reasons we have held that the evidence does not preponderate against the court's placement of the fifteen acre tract, we hold that the evidence does not preponderate against the finding that the tract was not in the Quillen survey.[7]

---

[7] Plaintiff contends that the trial court erred in making the following statement in its Memorandum Opinion on Motion to Alter or Amend: "The Quillen survey expressly excludes at least the majority of the disputed 15 acre tract, identified in said survey as Tax Map 51, parcel 4 and belonging to Lila Coleman, Defendants' predecessor in title." We agree that the Quillen survey does not include the words "Tax Map 51, Parcel 4 and belonging to Lila Coleman, Defendants' predecessor in title." We do not agree that the court's statement, taken in context, constitutes error.

In response to Plaintiff's motion to amend, the trial court expressly found that the property description in the deeds in Plaintiff's chain of title to the 240 acre tract did not include the fifteen acre tract and, further, that the fifteen acre tract was separately assessed for tax purposes. This was in addition to the court's discussion in the original Memorandum Opinion wherein it traced Defendants' title to the fifteen acres and held that the tract was initially a part of a 61 acre tract and was first conveyed out of the 61 acre tract in a 1928 deed. We reiterate our earlier holding that the evidence does not preponderate against the court's location of the fifteen acre tract. In addition, the language in Plaintiff's deeds upon which it relies to support its claim of constructive adverse possession is insufficient. *See Jackson v. Sappington*, 2003 WL 21756688, at*3 ("If the description is indefinite or uncertain so as to make it impossible for the deed to locate the land, the conveyance and holding thereunder is void as a basis for constructive possession.").

The evidence does not preponderate against the trial court's finding that Plaintiff failed to establish the proof of color of title necessary for a successful claim of constructive adverse possession.

### C. Payment of Taxes

Plaintiff contends that the trial court erred in holding that its action was barred by Tenn. Code Ann. § 28-2-110(a)[8] because Plaintiff had not paid taxes on the disputed property for more than twenty years. Plaintiff does not contest the court's finding that it did not pay taxes on the fifteen acre tract; rather, in reliance on *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366 (Tenn. 2007), Plaintiff contends that the statute should not apply because "the tracts are contiguous, a relatively small area is at issue, and the respective owners making claims of ownership have paid their respective real estate taxes."

Plaintiff's reliance on *Cumulus Broadcasting* is misplaced. Unlike the dispute in *Cumulus Broadcasting*, the fifteen acre tract at issue in this case is not an area which overlaps two adjoining properties; it is a separately conveyed parcel distinctly assessed for tax purposes. Moreover, as part of the relief granted in the case, the court determined the

---

[8] Tenn. Code Ann. § 28-2-110(a) provides that:

Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

tract to be owned by Defendants; consequently, Plaintiff has no legal claim to or interest in the property.

Accordingly, the trial court did not err in holding that Plaintiff's original action for ownership of property was barred by Tenn. Code Ann. § 28-2-110.

Defendants argue that the trial court erred in holding that Defendants were not entitled to a presumption of ownership of the fifteen acre tract as a result of their payment of taxes pursuant to Tenn. Code Ann. § 28-2-109. In light of our affirmance of the court's holding that Defendants are owners of the tract, we need not reach this issue.

## IV. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
**RICHARD H. DINKINS, JUDGE**