# Sarah Griffin et al. *v.* Ambrose Mulley et al., Appellants.

*Adverse possession—Title—Evidence.*

In an action of ejectment the writ issued on March 21, 1890. Defendants claimed title by adverse possession for twenty-one years. There was evidence that a house on the property was burned down in April or May, 1868. Some of the witnesses said that defendant's predecessor in title took possession of the land during the same season that the fire occurred. Other witnesses said that possession was taken during the next season. *Held*, that it was not improper for the court to charge: " If the defendants have failed to satisfy you by the weight of the evidence, when it was that Benjamin entered into possession, so that you are unable to say from the evidence whether it was before or after the 21st of March, 1869, then the defendants could not claim a verdict at your hands."

Argued Feb. 26, 1895. Appeal, No. 70, July T., 1894, by defendants, from judgment of C. P. Lackawanna Co., April Term, 1890, No. 841, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, and MITCHELL, JJ. Affirmed.

Ejectment for a lot of ground in the first ward in the city of Scranton. Before SCHUYLER, P. J., of the third judicial district, specially presiding.

The facts appear by the charge of the court, which was in part as follows:

" This is an action of ejectment brought by the heirs of Aaron Griffin, deceased, against the widow and heirs of Nathaniel Fitch, deceased, and certain other parties, to recover possession of a lot of ground in the city of Scranton. Both parties claim title to this lot of ground through one Edmund Griffin, who was, at one time, the undisputed owner of the premises, and the plaintiffs trace their title in the following way :

" Edmund Griffin made a deed to his mother, Elizabeth Griffin; while the property was in the possession of Elizabeth Griffin it was sold away from her by the sheriff, and was purchased by Thomas Woodbridge, who received a deed for the same. Thomas Woodbridge assigned his deed to David Wigton, David Wigton in turn was sold out by the sheriff, and at that sale Aaron Griffin became the purchaser. Aaron Griffin died in 1883, leaving the present plaintiffs as his heirs. This chain of title is complete, and if there were nothing else in the case except this, it would be your duty, without leaving the box, to return a verdict in favor of the plaintiffs for the property described in the writ.

" Against this showing, however, on the part of the plaintiffs, the defendants set up a title, by what is known to the lawyers as adverse possession. Adverse possession continued for a period of twenty-one years divests the title of the owner of the property against whom the possession has been taken. Therefore, no matter.how straight, no matter how strong the title of the present plaintiffs, if the defendants, in opposition to that title, have established a title by adverse possession, the title of the plaintiffs must yield to the title by adverse possession. . . .

" [The requirement that the possession, which will divest the title, should be open and notorious, is for the purpose of giving the holder of the title notice of his danger.

" It is also necessary that the possession should be continuous,- uninterrupted. If the possession, at any time during the running of the twenty-one years, was abandoned for a single day, or a single hour, if it was abandoned that would break the con-

tinuous possession, and would prevent a recovery under a claim of title by adverse possession.

" The possession must also be exclusive of the owner of the title to the property. If the party in possession has a concurrent possession with the owner, he could not acquire title to the property by reason of an adverse possession.

" The possession must also be, what is called in the law, hostile possession. Hostile possession is not what a layman might probably consider it to be, that the person entering into possession should enter armed cap-a-pie, or that he should defend the continuity of his possession by planting artillery all along his line—that is not the kind of hostility that the law contemplates. Entering and exercising acts of dominion thereunder, is hostile. Leasing, conveying, improving, are the highest acts of ownership, and the exercising of these acts strongly characterizes the possession with exclusiveness and hostility.] [5] I have thus briefly gone over the elements that go to constitute adverse possession, such as is necessary to divest title to real estate.

"I have already said to you, that the possession must be continued uninterruptedly for a period of twenty-one years prior to bringing the suit. This action was brought on the 21st of March, I believe, of 1890. In order to recover under a claim of title by adverse possession, the defendants must satisfy you by the weight of the evidence ; because the burden is upon the defendants to show that their title is good, they must satisfy you by the weight of the evidence that, at least as early as the 21st of March, 1869, their alleged adverse possession began. They claim that it did begin as early as the 21st of March, 1869, and prior to that. Their claim is that there was a house on this property that was burned down either in April or May, 1868. There doesn't seem to be any serious dispute about that date, or that the house was burned down at that time. Now the defendants claim that shortly after the burning down of this house Mr. Benjamin, who had become the purchaser of the property, under a sheriff's deed, I believe, and under an execution against Edmund Griffin, they claim that Benjamin entered into possession of this property shortly after the burning down of this house in 1868, April or May.

" [There are no witnesses who testified as to the date, or

the exact date, on which Benjamin entered into possession of the premises, if you find that he did enter into possession of the premises; I think the most that the witnesses say is, that it was shortly after the fire. What that means, it will be for you to determine, and you must determine, from the evidence, when it was that Benjamin entered into possession, if you can do so. If you cannot do so, why, then that is the misfortune of the defendants, because the burden, as I have already said, is upon them to show that the possession was begun prior to the 21st of March, 1869.

"Now that fact, and all the other facts are for your consideration, and it is for you to determine from the evidence, when it was that Benjamin entered into possession, if he entered into possession at all, and if he did enter into possession, whether that possession was continued by him, and by his successors in title for twenty-one years, down to the time of the bringing of this action of ejectment. If you find these facts in favor of the defendants, then the defendants would be entitled to your verdict.] [6] [If, however, the defendants have failed to satisfy you by the weight of the evidence when it was that Benjamin entered into possession, so that you are unable to say from the evidence whether it was before or after the 21st of March, 1869, then the defendants could not claim a verdict at your hands."

By Mr. Price: " There are a number of witnesses that testify that it was the same season of the fire, and several of them within a month or three months."

By the Court: " That may be; I do not pretend to remember the evidence."

By Mr. Amerman: " Some said the next season."

By the Court: " That will be for the jury. You have heard the testimony, and you will remember how it is.] " [7]

The plaintiffs have submitted the following points:

" [3. To constitute a possession such as will bar the title of the legal owner, four elements must co-exist: It must be (1) hostile or adverse; (2) actual; (3) visible, notorious, exclusive; and (4) continuous. *Answer:* I have already said to you that is the law and I affirm that point.] " [8]

The defendants have submitted a number of points:

" [1. That under all the evidence in this case the verdict

must be for the defendants. *Answer:* I cannot affirm that point.] " [9]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* among others were, (5-9) above instructions, quoting them.

*S. B. Price* and *H. M. Hannah*, for appellants, cited on the question of adverse possession : Price on Limitations and Liens, p. 80 (ed. 1857); Jones v. Porter, 3 P. & W. 132; Dikeman v. Parrish, 6 Pa. 225; Price on Limitations and Liens, p. 86; Irvine v. Sibbetts, 26 Pa. 477 ; Keyser v. Evans, 30 Pa. 507.

*J. Alton Davis* and *Lemuel Amerman, John B. Collings* with them, for appellee, cited on the question of adverse possession: Stephens v. Leach, 19 Pa. 262; Susquehanna & Wyoming Valley R. R. v. Quick, 68 Pa. 189; Ewing v. Alcorn, 40 Pa. 492; Washabaugh v. Entriken, 34 Pa. 74; Washabaugh v. Entriken, 36 Pa. 513; Cunningham v. Patton, 6 Pa. 355.

PER CURIAM, April 8, 1895 :

We are not convinced that either of the fourteen assignments of error should be sustained. The case depended on questions of fact which were properly submitted to the jury, and were by them determined in favor of the plaintiffs. There is nothing in either of the specifications of error that requires extended comment.

Judgment affirmed.