Sylvia T. WILSON

v.

Emily PRICE.

Court of Appeals of Tennessee,
at Knoxville.

Assigned on Brief May 13, 2005.

Aug. 22, 2005.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 6, 2006.

C. Douglas Fields, Crossville, Tennessee, for the appellant, Sylvia T. Wilson.

Farrell A. Levy and Jennifer L. Chadwell, Knoxville, Tennessee, for the appellee, Emily Price.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Plaintiff Price brought this cause of action for ejectment. Defendant Wilson invoked the affirmative defenses of adverse possession, the statutory limitations period prescribed at Tennessee Code Annotated § 28-2-103, and laches. The trial court determined that Defendant had not met

the elements of adverse possession upon finding Defendant's use of Plaintiff's property was permissive. The trial court entered judgment for Plaintiff, and Defendant appeals. We reverse in part, vacate in part, and remand for entry of judgment consistent with this opinion.

Emily Price (Ms. Price) and Earl Price (Mr. Price; collectively, "the Prices") and Sylvia Wilson (Ms. Wilson) and James Wilson (Mr. Wilson; collectively, "the Wilsons") owned adjoining lots in Lake Tansi, Tennessee ("the Price property" and "the Wilson property"). Mr. Price and Mr. Wilson are deceased, and the properties are currently owned by Ms. Price and Ms. Wilson. Ms. Price and Ms. Wilson now dispute ownership of a 17 by 250-foot strip of land located within the adjoining properties.

Sometime prior to 1982, the Wilsons built a utility wall on the disputed strip. They also constructed other improvements including a garage and concrete pads.[1] The Prices, who did not reside on their Lake Tansi property, first noticed the wall in May 1986. They hired a surveyor to resurvey the property to confirm the encroachment. In June 1986, Mr. Price wrote to Mr. Wilson to inform him of the encroachment. Mr. Wilson wrote:

I recently dropped by my lot on Lake Tansi and discovered what appeared to be a concrete block wall and some sort of concrete pad or ramp built on my property. In deference to your professional status, I gave you the benefit of the doubt and hired a surveyor, Mr. W.J. Moore, to make a survey of my lot (# 411) at a cost of $275.00 for research and surveying to ascertain who was in error. The survey shows that the block

---

1. The parties dispute the dates on which the Wilsons constructed these improvements, all of which encroach, to some degree, on the disputed strip. The parties agree, however, that the wall was in existence in 1982.

wall and concrete pad are on my property by about 17 feet at a point near the lake edge. My best trees were on that side of the lot but I am sure that we can come to an equitable agreement on the replacement value of them.

Mr. Wilson, I think that people should try to work out problems of this nature between themselves if possible. I am willing to try if you are. Please respond by return mail within 5 days of receipt of this letter.

Mr. Wilson replied by letter on August 17, 1986, and stated:

We had our property line surveyed prior to making the improvements that we have made over the years and now I am trying to get the original surveyers [sic] back to re-establish the property line in question.

Let me assure you, please, that we have no intention of trying to lay claim to something that is not rightfully ours. If there is an ungency [sic] involved, such as your selling the property or building a house on it, please do not hesitate to call me....

I hope we can clear this matter up soon and it is our desire to expedite it as quickly as possible.

I will be in touch with you just as soon as I can get the survey done.[2]

There was no further written communication regarding the disputed property until February 6, 1993, when Mr. Price summarized in writing the content of his telephone conversation with Mr. Wilson. Mr. Price stated that he had a buyer interested in purchasing his property and insisted on resolving the issue pertaining to the strip of land. He suggested two options: removal of the structures or purchase of the

strip of land by the Wilsons. Mr. Price offered to sell the strip for $3,000, and Mr. Wilson countered with $1,500. There is no indication in the record that a resolution was reached between the men and, at the trial of this matter, Ms. Wilson stated that she had no knowledge of this conversation or offer to buy or sell the land. Despite Mr. Price's assertion in the letter that he "need[ed] to have this resolved quickly or risk the loss of the sale," Mr. Price took no further action. Both Mr. Price and Mr. Wilson subsequently died.

On May 5, 2003, Ms. Price filed an ejectment action against Ms. Wilson for the removal of the wall and other structures. Ms. Wilson answered on May 23 and denied the structures were located on the Price property. She invoked, in the alternative, the affirmative defenses of the seven-year statute of limitations provided in Tennessee Code Annotated section 28–2–103, adverse possession, and laches. In 2004, as a result of this litigation, the parties obtained a new survey, which revealed that the Wilsons' wall encroached on the Price lot by approximately seventeen feet. Ms. Wilson stipulated that the improvements on her lot encroached on Ms. Price's property.

On April 27, 2004, the trial court, sitting without a jury, found that Ms. Wilson's defense failed for two reasons. First, the trial court determined that Ms. Wilson failed to establish adverse possession because her possession was permissive and not hostile as required by the statutes. Second, the trial court found that laches was inapplicable. In June 2004, the trial court ordered Ms. Wilson to remove the wall and granted Ms. Wilson easements for the encroaching portions of the garage and concrete pads. The ejectment order

---

**2.** At the trial of this matter, Ms. Wilson testified that their subsequent survey showed no encroachment and that Mr. Wilson notified Mr. Price of the survey. Ms. Price, however, testified that she had never received survey results or notification.

and easements granted by the trial court extended into property owned by the Lake Tansi Property Owners Association, which was not a party to the action. The trial court entered final judgment denying Ms. Wilson's motion to amend the judgment or for a new trial on November 1, 2004. Ms. Wilson filed a timely notice of appeal to this Court on November 24, 2004.

## Issues Presented

Ms. Wilson raises the following issues, as we slightly restate them, for our review:

(1) Whether the trial court erred by determining the Wilsons' use was permissive and not hostile.

(2) Whether the trial court abused its discretion by determining that the equitable defense of laches does not apply to this case.

(3) Whether the trial court erred in sustaining Ms. Price's action with regard to improvements on property not owned by Ms. Price at the time of trial.

(4) Whether the Lake Tansi Property Owner's Association was an indispensable party to this lawsuit.

Ms. Price raises the additional issue of whether Ms. Wilson is estopped from asserting adverse possession.

## Standard of Review

■■■ Whether the use of another's land has been adverse or permissive is a question of fact. *See Arrowood v. Williams,* 586 S.W.2d 131, 134 (Tenn.Ct. App.1979). We review a trial court's findings of fact *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn.2000). Questions of law, however, are subject to *de novo* review, with no presumption of correctness. *Gonzalez*

*v. State Dep't of Children's Servs.,* 136 S.W.3d 613, 616 (Tenn.2004).

## Analysis

### Adverse Possession

Although, based on the 2004 survey, the parties stipulated that the disputed property was located on the Price property, at trial Ms. Wilson testified that she believed the property was rightfully hers and that she and Mr. Wilson believed it was theirs when they constructed the wall and other improvements. Ms. Wilson asserts, however, as affirmative defenses, adverse possession and the statute of limitations provided by Tennessee Code Annotated § 28–2–103.

■■■ Adverse possession is the possession of real property of another which is inconsistent with the rights of the true owner. The underlying idea of the doctrine of adverse possession is "that the possession should be maintained in an open and notorious manner, so as to warn the true owner that a hostile claim is being asserted to his land." *Bensdorff v. Uihlein,* 132 Tenn. 193, 177 S.W. 481, 483 (1915). In order to assert adverse possession, a party must demonstrate that her possession has been exclusive, actual, adverse, continuous, open, and notorious for the required period of time. *Hightower v. Pendergrass,* 662 S.W.2d 932, 935 n. 2 (Tenn.1983). In Tennessee, twenty years is the prescriptive period for common law adverse possession without color of title. If a party has adversely possessed the land for the prescriptive twenty-year period, title vests in that party. *Cooke v. Smith,* 721 S.W.2d 251, 255–56 (Tenn.Ct.App. 1986). The burden is on the party claiming ownership by adverse possession to demonstrate the requisite elements by clear and convincing evidence. *O'Brien v.*

*Waggoner,* 20 Tenn.App. 145, 96 S.W.2d 170, 176 (1936).

In addition to the twenty-year prescriptive period for adverse possession, the legislature has prescribed a seven-year statute of limitations for actions to recover lands. The limitations period set forth in Tennessee Code Annotated § 28–2–103 provides:

Seven-year period runs from time right accrued—Extent of possession.—(a) No person or anyone claiming under such person shall have any action, either at low or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.

(b) No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located.

Tenn.Code Ann. § 28–2–103(2000 & Supp. 2004).

■ In order to invoke the seven-year limitations period to defend against an action for ejectment, the defendant must demonstrate possession for a period of at least seven years, and such possession must be adverse. Tenn.Code Ann. § 28–2–103 (2000); *Menefee v. Davidson County,* 195 Tenn. 547, 260 S.W.2d 283, 285 (1953). The statute provides only a defensive remedy. *Pyron v. Colbert,* 46 Tenn. App. 287, 328 S.W.2d 825, 830 (1959).

In the case now before us, Ms. Wilson asserts the trial court erred by determining her possession of the disputed property was permissive and not hostile. Ms. Price, on the other hand, submits that, in light of Ms. Wilson's testimony and the 1986 correspondence between Mr. Wilson and Mr. Price, the trial court correctly determined that Ms. Wilson's encroachment was permissive and that, accordingly, Ms. Wilson did not possess the property adversely and could not assert the seven-year statute of limitations.

■ We turn first to Ms. Price's assertion that Ms. Wilson's testimony demonstrates that the Wilsons' use of the Prices' land was not hostile. Ms. Price's argument, as we understand it, is that because the Wilsons believed the disputed property was theirs when they constructed the improvements, because Ms. Wilson continued to assert that the property was rightfully hers, and because she never intended to act in a "hostile" manner, the Wilsons' encroachment on the Price property was accidental and not "hostile" as required for a finding of adverse possession. The Prices, however, misconstrue the meaning of the word "hostile" as it pertains to adverse possession.

■ Unlike its general usage, hostility for the purposes of adverse possession does not require ill will. "Hostility" exists, in the legal sense, when one "holds the possession as his, against the claims of any other." *Hightower v. Pendergrass,* 662 S.W.2d 932, 937 (Tenn.1983). Moreover, the hostile possession must be open such that it provides notice to the world that the adverse possessor claims ownership of that property. *Cooke v. Smith,* 721 S.W.2d 251, 254 (Tenn.Ct.App.1986). Although fencing a property demonstrates a clear claim of ownership, inclosure is not necessary to demonstrate possession. *Bensdorff v. Uihlein,* 132 Tenn. 193, 177 S.W. 481, 482 (1915). Rather, the possessor must use the property in a manner consistent with its nature and purpose and in such a way as to give notice to the rightful owner that another is asserting dominion over his property. *Id.* at 483.

Additionally, a party is not required to harbor the intent to possess another's land in order to invoke the doctrine of adverse possession. *Liberto v. Steele,* 188 Tenn. 529, 221 S.W.2d 701, 703 (1949). "The possession, use, and dominion may be as absolute and exclusive where there is no dispute as to boundary, and hence the occupant has no actual intention to claim adversely to anyone, as where such an intention exists." *Gibson v. Shular,* 29 Tenn.App. 166, 194 S.W.2d 865, 867 (1946).

Ms. Wilson's testimony in this matter reveals confusion as to the meaning of "hostility" as it pertains to adverse possession. For example, in an effort to clarify the meaning of the word when testifying as to her hostility or lack thereof, Ms. Wilson asked opposing counsel, "you mean hostility toward [the Prices]?" When counsel answered in the affirmative, Ms. Wilson replied, "[a]bsolutely, no." Later, Ms. Wilson explained her understanding of hostility by defining it as "something we would do in order to irritate [the Prices] or take something from them. Hostility is with bad feelings, I think."

Clearly, Ms. Wilson's understanding of the word "hostile" had little relationship to whether her use of property belonging to Ms. Price was hostile in the sense of being adverse to Ms. Price's ownership interest. The Wilsons' encroachment and use of the Price property, devoid of ill will or bad feelings, was hostile to the Wilsons' ownership interests. Moreover, although when the Wilsons first constructed the wall sometime prior to 1982 they believed the land was within their boundaries, the 1986 correspondence between Mr. Price and Mr. Wilson clearly demonstrates that, dating from 1986, the parties disputed the boundary between their properties.

We next turn to whether the Wilsons used the Price property with permission. Possession that might otherwise appear hostile cannot support a claim of adverse possession if carried out with the permission of the legal title holder. *Menefee v. Davidson County,* 195 Tenn. 547, 260 S.W.2d 283, 285 (1953). Ms. Wilson asserts that the trial court erred when it found the Wilsons' possession of the disputed strip of land to be permissive. She contends that the evidence available is insufficient to support such a finding. We agree.

There is nothing in the record to indicate that Mr. Price gave Mr. Wilson permission to construct improvements on the Price property. Further, there is nothing in the record to demonstrate that Mr. Wilson believed Mr. Price had communicated such permission. The 1986 correspondence between Mr. Price and Mr. Wilson and Mr. Price's 1993 letter to Mr. Wilson demonstrates that Mr. Price did not give the Wilsons permission to erect or maintain structures on the Price property. Rather, they indicate a disagreement as to the boundary between the properties, and Mr. Price's 1993 letter is a demand to remove the structures or purchase the property. The matter clearly was never resolved.

We respectfully disagree with the trial court that the evidence in this case suggests that the Prices' acquiescence in the Wilsons' encroachment on their property implied a permissive use. Failure to actively object does not imply permission. *Lamons v. Mathes,* 33 Tenn.App. 609, 232 S.W.2d 558, 563 (1950). As this Court has noted, "if failure to object could be considered evidence of permissive use the holder of the legal title could always defeat an adverse claimant by merely showing that he had never objected to the use of his property." *Id.* As noted, Mr. Price's 1993 demand to Mr. Wilson to remove the structures indicates not permission but objection. The Prices simply failed to take

action to resolve the adverse use of their property by the Wilsons until Ms. Price commenced this cause of action in 2003.

 Additionally, contrary to Ms. Price's assertion otherwise, we are unconvinced that the purported sale negotiation between the neighbors amounted to Mr. Wilson's admission of superior title in Mr. Price. An offer to purchase disputed land is not tantamount to an admission of superior title in another. *Headerick v. Fritts,* 93 Tenn. 270, 24 S.W. 11 (1893). In *Headerick,* the Supreme Court of Tennessee considered an ejectment action in which the defendant's predecessor in interest had offered to purchase the disputed land from the plaintiff. The court distinguished between cases in which superior title in another is admitted and the offer is effort to buy real title, and cases in which the offer represents an effort to quiet title and prevent litigation. *Id.* at 12. In *Headerick,* the parties entered into a contract, but never completed the sale. *Id.* They allowed the transaction to go unconsummated for six years. *Id.* The court concluded that the contract did not represent an adverse possessor's effort to buy superior title, but was an attempt to "buy in a hostile claim" in order to quiet title. *Id.* This matter presents similar facts. The adverse possessor, Mr. Wilson, believing he owned the disputed strip of land, made a counter-offer to purchase the land in order to prevent litigation and settle the dispute. The parties did not reach an agreement, however, and took no further action for ten years. There is nothing in the record to suggest, however, that Mr. Wilson conceded title to the Prices. In sum, we reach a conclusion like that reached by the court in *Headerick.* The 1993 letter describing the sales negotiations between Mr. Price and Mr. Wilson does not evidence permissive use by way of conceding to superior title, but demonstrates an effort to settle the dispute and quiet title without litigation.

The Wilsons' use of the disputed strip of land on the Price property was open, exclusive, notorious, and hostile. It continued uninterrupted for at least twenty years prior to the commencement of this lawsuit. Additionally, there is nothing in the record to support a finding that this use was permissive. The evidence preponderates against the findings of the trial court in this matter. Ms. Wilson has established ownership of the disputed property by adverse possession.

*Estoppel*

 We next consider Ms. Price's assertion that Mr. Wilson's 1986 letter to Mr. Price functions to estop Ms. Wilson from now arguing adverse possession. In urging this result, Ms. Price advances a promissory estoppel theory. She contends that she detrimentally relied on Mr. Wilson's assurance that he would not claim property not rightfully his, and that Ms. Wilson should accordingly be estopped from asserting adverse possession as a defense to Ms. Price's action. In essence, Ms. Price argues that Mr. Wilson's 1986 statement that he was not claiming property not rightfully his was a promise not to claim ownership by adverse possession; that she relied on that promise to her detriment; and that, accordingly, Ms. Wilson should be estopped from asserting adverse possession as a defense.

 Under the doctrine of promissory estoppel, also known as detrimental reliance, a promise made by a promisor that reasonably may be expected to induce action or forbearance on the part of the promisee, and which does induce such action or forbearance, is binding if injustice can be avoided only by enforcement of the promise. *Calabro v. Calabro,* 15 S.W.3d 873, 878 (Tenn.Ct.App.1999) (citations

omitted). The action or inaction of the promisee is a substitution for consideration under the doctrine. *Id.* at 879. The remedy granted for breach of such a promise, however, may be limited as justice requires. *Id.* at 878.

In order to assert the doctrine of promissory estoppel, the party must show that a promise was made and that he reasonably relied on the promise to his detriment. *Id.* at 879. Although the existence of an expressed contract is not required in a claim of promissory estoppel, the promise on which the promisee relied must have been unambiguous and not unenforceably vague. *Id.*

In this action, Ms. Price has failed to demonstrate an unambiguous promise not to assert adverse possession on the part of Mr. Wilson, that she reasonably relied on such a promise, or that Mr. Wilson's statement induced action or forbearance. The Wilsons constructed a wall on property claimed by both the Wilsons and the Prices. The Prices failed to object to the wall for at least four years. Mr. Wilson's assertion that the Wilsons did not intend to claim property not rightfully theirs clearly indicates that they believed they owned the disputed property. At minimum, it indicates they asserted ownership and put the Prices on notice that ownership of the strip of property was in dispute. In 1993, Mr. Price demanded removal of the structures or purchase of the property. For ten years, nothing happened. For over twenty years, the disputed strip of land remained behind a substantial wall and under the Wilsons' care, maintained in a manner consistent with ownership.

There is nothing that would reasonably lead Ms. Price to believe Ms. Wilson would not claim ownership by adverse possession. Certainly, there is no evidence of a promise made by Mr. Wilson that induced the

Prices to forego an action. Further, even assuming, *ad arguendo,* a promise by Mr. Wilson not to assert ownership by adverse possession in an offensive action, there is absolutely nothing in this record to demonstrate that Ms. Price could reasonably rely on such a promise to estop Ms. Wilson from asserting adverse possession as a defense to an action brought by Ms. Price. This argument is without merit.

*Jurisdiction*

Ms. Wilson asserts that the trial court lacked jurisdiction over a portion of the disputed property that is owned by the Lake Tansi Property Owners Association and she challenges the trial court's order pertaining to that portion of the land. Ms. Price asserts this issue was not raised in the trial court and, accordingly, may not be raised for the first time on appeal. In general, issues may not be raised for the first time on appeal. *Cantrell v. Walker Die Casting, Inc.,* 121 S.W.3d 391, 396 (Tenn.Ct.App.2003). However, subject matter jurisdiction cannot be waived.

Subject matter jurisdiction "relates to the right of the court to adjudicate, or to make an award through the remedies provided by law upon facts proved or admitted in favor of, or against, persons who are brought before the court under sanction of law." 17 Tennessee Jurisprudence *Jurisdiction* § 2 (1994). It concerns the authority of a court to hear a controversy. *Meighan v. U.S. Sprint Communications,* 924 S.W.2d 632, 639 (Tenn.1996). Subject matter jurisdiction relates to the nature of the claim and relief sought. *Id.* If a court acts without subject matter jurisdiction, its orders are void. *Riden v. Snider,* 832 S.W.2d 341, 343 (Tenn.Ct.App.1991). Such orders are a nullity and may be collaterally attacked. *County of Shelby v. City of Memphis,* 211

Tenn. 410, 365 S.W.2d 291, 292 (Tenn. 1963).

 In this case, the trial court had no authority to exercise jurisdiction over a portion of property not belonging to either party. Accordingly, we vacate the trial court's order as it pertains to the portion of the 17 by 250–foot strip of property owned by the Lake Tansi Property Owners Association.

### Holding

We vacate the trial court's judgment with respect to the portion of the 17 by 250–foot strip of property owned by the Lake Tansi Property Owners Association. We reverse the trial court's finding of permissive use and its judgment granting an easement to Ms. Wilson. We find that Ms. Wilson has established ownership by adverse possession of the portion of the disputed 17 by 250–foot strip of property which the parties stipulated was located on the Price property and which is not located on property belonging to the Lake Tansi Property Owners Association. In light of our holding in this matter, it is unnecessary to address the defense of laches. We remand this matter for entry of judgment consistent with this opinion. Costs of this appeal are taxed to the Appellee, Emily Price.