IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 3, 2023 Session

**SYLVIA COBBINS v. MICHAEL FEENEY ET AL.**

**Appeal from the Chancery Court for Davidson County**
No. 20-0684-II      Anne C. Martin, Chancellor

_____

**No. M2022-01357-COA-R3-CV**

_____

This appeal involves claims to three disputed areas based on adverse possession and prescriptive easement. We affirm the trial court's decision denying the plaintiff's claims.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Shea Thomas Hasenauer, Nashville, Tennessee, for the appellant, Sylvia Cobbins.

John Thomas Feeney, Brentwood, Tennessee, for the appellees, Michael Feeney, Davis Christopher Cole, and Hamid Zahrir.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Sylvia Cobbins owns property located at 108 Chestnut Street in Nashville ("the Cobbins property"). One side of the Cobbins property abuts the rear property line of two pieces of property: 1117 1st Avenue South, owned by Hahmid Zahrir ("the Zahrir property"), and 1119 1st Avenue South, owned by Michael Feeney and Christopher Cole ("the Feeney/Cole property"). The parties have stipulated that each party paid all property taxes related to their deeded property during their ownership.

Disputed Areas

Area #1 is located at the rear of the Zahrir property and consists of a strip of land (9.83 feet by 52 feet, or about 511 square feet) which Cobbins used as part of her back yard. Area #1 is pictured below in the box to the right of the house:



In 2015, a previous owner of the Zahrir property placed a fence toward the back of the Zahrir property, at one edge of Area #1. Cobbins purchased a shed in 2018 and placed the shed in Area #1, behind the fence.[1] It is undisputed that Area #1 is located within the boundaries of the Zahrir property.[2]

Area #2 is located at the rear of the Feeney/Cole property and consists of a strip of land (10.8 feet by 52 feet, or about 562 square feet) which Cobbins used as part of her front yard. Area #2 is located to the left of the driveway, as pictured below:



---

[1] The shed does not appear in the photograph of Area #1.
[2] Two surveys were conducted on the properties, and the parties do not dispute the surveyors' findings.

A fence (pictured above) extended from Cobbins's house to the Feeney/Cole driveway and passed through Area #2; the fence was destroyed by a storm in 2019.

Area #3 is the Feeney/Cole driveway (12 feet by 52 feet), pictured below:



Cobbins's deed does not contain an easement regarding the Feeney/Cole driveway. Two utility lines in the left-hand corner of Area #3 service the Feeney/Cole property. The driveway was used by Feeney and Cole and by Dava and Donnie Frierson,[3] the previous owners of the Feeney/Cole property. It is undisputed that the driveway was also used by individuals from the Cobbins household and individuals living at the Zahrir property.

The Lawsuit

Cobbins initiated this lawsuit in July 2020 against Feeney and Cole and Zahrir ("the Defendants"). She sought ownership of Area #1 and Area #2 through common law adverse possession. Defendants denied adverse possession and relied upon the statutory presumption of ownership based upon the payment of property taxes set forth at Tenn. Code Ann. § 28-2-109.[4] Cobbins later filed an amended complaint adding the theory of

---

[3] Feeney and Cole filed a third-party complaint against the Friersons for breach of warranty of title, and the trial of that matter was bifurcated from the claims on appeal.

[4] Tennessee Code Annotated section 28-2-109 states:

> Any person holding any real estate or land of any kind, or any legal or equitable interest therein, who has paid, or who and those through whom such person claims have paid, the state and county taxes on the same for more than twenty (20) years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and who has had or who and those through whom such person claims have had, such person's deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for such period of more than twenty (20) years, shall be presumed prima facie to be the legal owner of such land.

prescriptive easement with respect to the Feeney/Cole driveway, Area #3. Feeney and Cole denied that Cobbins was entitled to a prescriptive easement.

The trial court denied motions for summary judgment by Cobbins and Feeney and Cole. The case was tried without a jury on August 2 and 3, 2022. With a few exceptions, the trial court's factual findings (as stated in its memorandum opinion) are not challenged on appeal. We will, therefore, rely upon the trial court's findings in summarizing the evidence below.

<u>Facts concerning the Properties</u>

Cobbins bought her property in September 1999 from Metro Development and Housing Agency. Based upon pictures and advertisements concerning the property, she assumed that Area #2 belonged to her. The Friersons purchased the Feeney/Cole property in 2007 from the Metro Development Housing Authority. The trial court found that, although they used Area #2, the Friersons "were unaware this was part of their property;" they "were aware that the driveway belonged to them, but they had no issue with [Cobbins] using it." [5]

Cobbins and others on her behalf "mowed and maintained Disputed Areas #1 and #2, her children and grandchildren used the areas for recreational purposes, and [Cobbins] used the driveway located on the Feeney/Cole Property to enter her backyard through a gap in the fencing." Cobbins also had her own separate driveway off of the public alleyway and regularly parked on the grass surrounding her house. Before Cole and Feeney and Zahiri purchased their properties, Cobbins "had no interactions with the neighboring owners about her use of any of these areas."

Feeney and Cole bought their property from the Friersons in June 2019. From September 1999 until June 2019, Cobbins "regularly used" the three disputed areas "without issue." After moving in, Feeney and Cole "began having issues with strangers coming onto their property at night" and decided to build a fence along their property line. A fence contractor came to the property and walked the property line with Feeney; the contractor measured the area and made markings on the property based upon his findings. During the fence contractor's visit, Anthony Starnes, a friend of Cobbins who lived at the Cobbins property, approached Feeney and the contractor and told Feeney that Feeney was "not allowed to put a fence in this area." Feeney and Cole both testified that this encounter occurred on September 21, 2019; Starnes was unsure about when the conversation occurred. Later the same day, Starnes had another confrontation with Cole at the Feeney/Cole residence regarding the installation of a fence. Starnes relayed these conversations to Cobbins sometime after they occurred.

_____

[5] Unless otherwise identified, all quotations are from the trial court's findings of fact in its Memorandum and Order entered on September 2, 2022.

Zahrir bought his property in 2018 and used it exclusively as a rental property. Although he did not obtain a survey before buying the property, Zahrir measured the property himself and determined that his property extended past the fence in Area #1. Zahrir rarely visited the property; when he did, he maintained the fence in Area #1. At some point prior to the filing of the lawsuit by Cobbins, Zahrir spoke to Starnes about the fence dispute. Around the same time, "Zahrir also had a conversation with [Cobbins] and informed her that he would consent in writing to her use of Disputed Area #1 and allow her to keep the shed, but it was his property and he was not willing to concede that it belonged to her."

After the altercations with Starnes, Feeney and Cole hired Jesse Walker to conduct a boundary survey. Walker "found that the boundary lines were accurately depicted in the deeds and plats of record" and provided Feeney and Cole with "a letter detailing his findings and a written survey drawing." Although Cobbins disputed receiving the written survey, the trial court found that she did receive the survey. The court made the following related findings:

> Specifically, on May 21, 2020, counsel for Feeney and Cole, John Thomas Feeney, sent [Cobbins] a letter requesting that she either accept or refute Mr. Walker's boundary survey by June 15, 2020. On June 8, 2020, [Cobbins] responded stating, "Thanks to the work performed by the surveyor at Jess Walker Engineering, the property lines have been confirmed," and detailed her issues with Feeney and Cole installing a privacy fence, including purported homeowner's association guidelines for an individual to get approval to modify or improve their property. No claim to possession was asserted in the June 8, 2020 letter. Although [Cobbins] admits to signing this letter, she insists that a third party wrote it and that she does not agree with its contents; however, the Court does not credit this testimony. Counsel for Feeney and Cole responded in a letter dated June 12, 2020.

Cobbins subsequently obtained counsel, who sent a letter to Feeney and Cole's counsel informing Feeney and Cole of her intention to claim ownership of the disputed areas in an action for adverse possession.

After the lawsuit was filed, Cobbins hired her own surveyor, who surveyed her property and made findings similar to Walker's survey, confirming that Cobbins's deed did not include the three disputed areas. At trial, Cobbins testified that she never witnessed any of Defendants using Areas #1 and #2 until the lawsuit was filed.

Trial Court's Decision

On September 2, 2022, the trial court entered a memorandum and order including findings of fact and conclusions of law. With respect to Area #1 and Area #2, the court

- 5 -

found that Cobbins's adverse possession claims were barred by the statutory bar set forth at Tenn. Code Ann. § 28-2-110(a).[6]  Moreover, even without the statutory bar, the court concluded that, as to both Area #1 and Area #2, "there was insufficient evidence to demonstrate that [Cobbins] exercised such dominion over this particular area or acted toward it in such a way as to unmistakably indicate she was claiming ownership of it throughout the twenty-year period."   As to Area #3, the court determined that Cobbins failed to establish a claim for a prescriptive easement.  The court found that "all the surrounding neighbors used the driveway at times" and that the previous owners never believed that Cobbins "was asserting any ownership of this driveway."  Cobbins appealed.

On May 22, 2023, Cobbins filed a motion pursuant to Tenn. R. App. P. 7 appealing the trial court's April 14, 2023 order denying her motion for an injunction and/or a stay pending appeal.  She did not request a separate order on her motion, but stated "she will await this Court's main and overall judgment on the appellate case."

The issues raised by Cobbins on appeal are as follows: (1) whether Cobbins acquired title to Area #1 via adverse possession; (2) whether Cobbins acquired title to Area #2 via adverse possession; (3) whether Cobbins gained a prescriptive easement to Area #3; and (4) whether Cobbins has a right to injunctive relief to protect her use and possession of these three areas.

STANDARD OF REVIEW

In non-jury cases, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review a trial court's conclusions on questions of law de novo without a presumption of correctness. *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 382 (Tenn. 2015). If a trial court's factual findings depend on a witness credibility determination, "we will not reevaluate that assessment in the absence of clear and convincing evidence to the contrary." *Shealy v. Williams*, No. E2009-00126-COA-R3-CV, 2010 WL 3504449, at *4 (Tenn. Ct. App. Sept. 8, 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *Newman v. Woodard*, 288 S.W.3d 862, 865 (Tenn. Ct. App. 2008)).

---

[6] Tennessee Code Annotated section 28-2-110(a) states:

> Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

ANALYSIS

I.      Adverse possession

Cobbins argues that she acquired title to Area #1 and Area #2 by common law adverse possession. She asserts that she "used and possessed" these areas as part of her front and back yard from September 23, 1999 to September 23, 2019. To support her position, Cobbins emphasizes that she regularly cut the grass in the two areas and that she and her family members treated the areas as their own, including by parking their cars and playing there. Cobbins erected a shed in Area #1 and asserts that Zahrir knew that she had erected a shed but never raised an issue about it. She further avers that none of the Defendants ever asked her to stop using Area #1 or Area #2.

Our Supreme Court discussed the doctrine of adverse possession, both common law and statutory, in *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366 (Tenn. 2007). Common law adverse possession is based upon the idea "'that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed.'" *Cumulus*, 226 S.W.3d at 376-77 (quoting *Ferguson v. Prince*, 190 S.W. 548, 552 (Tenn. 1916)). To establish adverse possession, a claimant must prove by clear and convincing evidence that the possession was "exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time." *Id.* at 377 (citing *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n.2 (Tenn. 1983)). The clear and convincing evidence standard, a higher level of proof than the preponderance of the evidence standard, "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence" and "should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established." *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

The trial court concluded that, even without the statutory bar,[7] Cobbins did not meet "her burden of proving all the elements necessary to demonstrate adverse possession by clear and convincing evidence for either Disputed Areas #1 or #2." To prove common law adverse possession, Cobbins was required to establish by clear and convincing evidence that her possession was for twenty (20) years and was "(a) actual and exclusive; (b) open, visible, and notorious; (c) continuous and peaceable; and (d) hostile and adverse." *Cumulus*, 226 S.W.3d at 376.

This part of the trial court's decision concerns factual issues. Pursuant to Tenn. R. App. P. 27(a)(7)(A), the appellant's brief shall contain an argument setting forth "the contentions of the appellant with respect to the issues presented . . . with citations to the

---

[7] Because we have concluded that Cobbins failed to meet her burden of proof on her adverse possession claims, we need not address the application of the statutory bar based upon the payment of taxes.

authorities and appropriate references to the record (which may be quoted verbatim) relied on." Furthermore, Rule 6 of the Rules of the Court of Appeals contains the following requirements:

> (a) Written argument in regard to each issue on appeal shall contain:
> > (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, *with citation to the record where the erroneous or corrective action is recorded.*
> > (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
> > (3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
> > (4) *A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.*
> > (b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. *No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.*

(Emphasis added). Cobbins's main appellate brief fails to comport with the Tennessee Rules of Appellate Procedure and the Rules of the Court of Appeals of Tennessee. In the argument sections addressing the issues on appeal, Cobbins does not include citations to the record for any of her factual assertions. On this basis, this Court may deem an argument to be waived. *See Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) (declining to address the appellant's issues based upon deficiencies in his brief, including a "failure to make appropriate references to the record"). We note that Cobbins did include citations to the record in a section of her main appellate brief entitled "Other Issues with the Trial Court's Ruling" and in her reply brief. To the extent that Cobbins failed to include citations to the record, we deem her arguments waived.

### a. Area #1

Cobbins focuses her arguments regarding Area #1 on her own use of the disputed area and the asserted failure of Zahrir to prove that he or the previous owner used Area #1. The burden of proof, however, was on Cobbins to establish all of the elements of adverse possession, and the trial court found that she failed to prove all of the necessary elements by clear and convincing evidence.

With respect to Area #1, the trial court made the following pertinent findings:

> As to Disputed Area #1, the Court finds that Plaintiff's use was not "actual and exclusive" or "hostile and adverse." Before Zahrir purchased the Zahrir Property, Mrs. Frierson testified that the previous owner, Zack, used this disputed area, which was not enclosed and was an open area at that time. Specifically, that owner used the area for parking and eventually erected a fence along the driveway line in the area in 2015. Plaintiff did not place her shed structure in the area until 2018. Further, Zahrir testified that when he purchased his property in 2018, he was aware that his boundary line extended past the fence at the back of his property. He further testified that he used this area when he came to the property, including maintaining the fence. He did not have an issue with Plaintiff leaving her shed on this area, but did assert his ownership as to the property to both Starnes and Plaintiff on more than one occasion. Zahrir offered to enter into a written agreement to allow Plaintiff's continued use, but he would not concede that she owned the area. There is evidence that this area was shared and used jointly by Zahrir and his predecessor in title during the requisite time period, which fails to demonstrate exclusivity. Further, an adverse use of the property is a use not permitted by the property owner, as possession that might otherwise appear hostile cannot support a claim of adverse possession if carried out with the permission of the legal title holder. *Wilson v Price*, 195 S.W.3d 661, 668 (Tenn. Ct. App. 2005) (citing *Menefee v. Davidson County*, 195 Tenn. 547, 260 S.W.2d 283, 285 (1953)). Plaintiff's use here was not adverse. To the contrary, although Zahrir disputed Plaintiff's ownership of this area, he also testified that he was aware of the Plaintiff's use and expressly permitted her to use it.

The trial court held that Cobbins failed to meet her burden of proof.

Adverse possession is a question of fact. *Cumulus*, 226 S.W.3d at 377. Adverse possession has been defined as "the possession of real property of another which is inconsistent with the rights of the true owner." *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005). The idea underlying the doctrine of adverse possession is "'that the possession should be maintained in an open and notorious manner, so as to warn the true owner that a hostile claim is being asserted to his land.'" *Id.* (quoting *Bensdorff*, 177 S.W. at 483). The open and notorious use must also be continuous, lasting for the entire twenty-year period. *See Hightower*, 662 S.W.2d at 937. Exclusive possession requires that the "holder claims exclusive right to say who can and who cannot come on his possession." *Id.* For the possession to be adverse and hostile, the holder must "claim[ ] to hold the possession as his, against the claims of any other." *Id.* (citing *Ballard v. Hansen*, 51 N.W. 295 (Neb. 1892); *Griffin v. Mulley*, 31 A. 664 (Pa. 1895)).

All of the required elements are designed to establish that the true owner had notice that someone claimed the right to possession of the property. *See* 142 AM. JUR. PROOF OF FACTS 3D *Acquisition of Title to Property by Adverse Possession* § 3. The actual property owner "must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact." *Cumulus*, 226 S.W.3d at 377 (citing *Kirkman v. Brown*, 27 S.W. 709, 710 (Tenn. 1894)).

In this case, there is no dispute that Cobbins never alerted Zahrir that she was claiming a right to possess Area #1. Cobbins points to the facts that she cut the back yard and that she and her guests would use Area #1 for parking regularly over the twenty-year period. She also cites her placement of a shed in Area #1, but the shed was not erected until 2018, less than two years prior to the end of the twenty-year period. Zahrir testified that he knew his property line extended beyond the fence erected by his predecessor in interest but that he simply did not care that Cobbins was making some use of the property. Cobbins points to no evidence that she ever claimed that she held Area #1 exclusively. Under all of the circumstances, the trial court concluded that there was "insufficient evidence to demonstrate that Plaintiff exercised such dominion over this particular area or acted toward it in such a way as to unmistakably indicate she was claiming ownership of it throughout the twenty-year period."

Cobbins raises an issue regarding whether the record contains evidence to support the trial court's finding that Zahrir's predecessor in interest parked his car in Area #1. She argues that Exhibit 32 does not, in fact, show a car that belonged to Zahrir's predecessor in interest. From the transcript, it appears that the relevant testimony was made in reference to several exhibits. Ms. Frierson testified that Zahrir's predecessor in interest, Zack, had parked in the referenced area, and it is not possible for this Court to discern precisely to which area Ms. Frierson referred. Based upon the record on appeal, the evidence does not preponderate against the trial court's finding. Moreover, the trial court's findings, including this finding, relied in part on the court's assessment of witness credibility. We give such determinations great weight on appeal and will not disturb them absent clear and convincing evidence to the contrary. *Lopez v. Sharp*, No. M2022-00679-COA-R3-CV, 2023 WL 2750153, at *3 (Tenn. Ct. App. Apr. 3, 2023).

Furthermore, even without any evidence that Zack parked in Area #1, Cobbins failed to present clear and convincing evidence that her use of Area #1 satisfied the requirements for common law adverse possession. We affirm the trial court's decision regarding Area #1.

b. Area #2

Cobbins argues that she gained ownership of Area #2 by virtue of her use and care of the area as part of her front yard. She again relies upon her regular mowing of the area, as well as upon her family's use of the area for parking, playing basketball, and playing.

Cobbins also states that Mr. Frierson referred to the fence abutting Area #2 as Ms. Cobbins's fence and that Ms. Cobbins cleaned up the wood after the fence blew down in a storm. She asserts that "Feeney and Cole had direct and constructive knowledge of [Ms. Cobbins's] adverse possession" of Area #2 but acquiesced to her use and took no action until May 2020.

The trial court rejected Ms. Cobbins's position and made the following factual findings:

> As to Disputed Area #2, the Court also finds that Plaintiff's use was not "actual and exclusive" or "hostile and adverse." The Friersons purchased the Feeney/Cole Property in 2007. Mrs. Frierson testified that they used the Disputed Area throughout their ownership. Both the Friersons testified that Mrs. Frierson used this area to back her car in and that their grandchildren used the area to play. Further, the Friersons' utility meters were in this area and continuously provided water to their property during their ownership. Although the Friersons were aware of Plaintiff's use of this area and had no issue with her use, they did not believe Plaintiff was asserting any ownership. Neither Mr. nor Mrs. Frierson ever discussed the ownership of this area with the Plaintiff at any time. Notably, in Plaintiff's June 8, 2020 letter, no claim to possession was asserted. Rather, Plaintiff referred Feeney and Cole to purported homeowners' association guidelines for approval to modify or improve their property. Although this letter occurred after the requisite time period, it demonstrates Plaintiff's position, or lack thereof, as to her assertion of ownership of the area. While at trial Plaintiff attempted to dispute what was written in the letter, the court does not find this testimony credible. Plaintiff did not sufficiently demonstrate "hostility" by clear and convincing evidence, which requires the adverse possessor to claim to hold possession of the disputed area as her own, against claims of any other. *See Hightower*, 662 S.W.2d at 937 (citing *Ballard v. Hansen*, 33 Neb. 861, 51 N.W 295 (1892); *Griffin v. Mulley*, 31 A. 664, 167 Pa. 339 (1985)).
>
> Moreover, while Plaintiff claims that the fence running from the side of her home to the Feeney/Cole driveway supports a finding of adverse possession, the Court disagrees. The fence did not enclose the area in question to cut off access to others; instead, it allowed shared use of the area as the other parties testified, and further, the fence was destroyed in 2019, but Plaintiff did not erect a new fence. Again, there was insufficient evidence to demonstrate that Plaintiff exercised such dominion over this particular area or acted toward it in such a way as to unmistakably indicate she was claiming ownership of it throughout the twenty-year period.

Cobbins asserts on appeal that she possessed Area #2 during the requisite twenty-year period and that "Feeney and Cole manifested to Ms. Cobbins zero intent to repossess

the area" before the expiration of the twenty-year period. We cannot agree. Cobbins emphasizes the alleged failure of Feeney and Cole to reenter the property and disrupt her alleged possession. As stated above, the burden of proof is on Cobbins to prove all of the elements of adverse possession. Cobbins cites *Hightower v. Pendergrass*, 662 S.W.2d at 935, for the proposition that the owner "must clearly indicate to the adverse occupant that the owner intends to repossess the land." In that case, however, the trial court found that the defendant "had had adverse possession of the premises for seven years," as required by Tenn. Code Ann. § 28-2-103. *Hightower*, 662 S.W.2d at 933. The issue on appeal was the legal question of whether "the permissive use of the disputed premises by the legal title holder . . . amounts to re-entry as to oust the adverse holder." *Id.* The Supreme Court stated the relevant rule: "'An owner's entry *in order effectively to interrupt adverse possession*, must be with the intention of possessing the land and must clearly indicate to the adverse occupant that the owner intends to repossess the land.'" *Id.* at 935 (quoting 2 C.J.S. *Adverse Possession* § 173). In the present case, there is no question of reentry or permissive use by the legal title holder(s) because Cobbins did not establish that she otherwise satisfied the requirements of adverse possession. The rule suggested by Cobbins would effectively reverse the burden of proof required in adverse possession cases.

In challenging the trial court's decision, Cobbins asserts that, based upon the evidence, "the logical finding is that there is no proof that Feeney and Cole even set foot in [Area #2]" before September 23, 2019. In fact, Feeney and Cole presented testimony that they used Area #2 and mowed the grass in the area.[8] Cobbins emphasizes that she never saw Feeney or Cole use Area #2. The trial court heard the witnesses' testimony and assessed their credibility. Cobbins has not presented clear and convincing evidence to call into question the trial court's crediting of the testimony of Feeney or Cole. Moreover, Mr. and Ms. Frierson both testified that they made use of Area #2. And Cobbins never stopped the Friersons or Feeney/Cole from using the area or claimed to own the property.[9]

Finally, Cobbins argues that "the underground pipes and easements are not at issue in this case" and that "no witness had direct knowledge of where the water lines are located." Feeney and Cole acknowledged that they had never seen the underground system, but they testified about the location of the meters, which pointed to the location of the pipes. In any event, we find no error in the trial court's factual finding on this point, and Cobbins did not present any contrary evidence at trial.

---

[8] Cobbins argues that Feeney and Cole's failure to disclose photographs from their Ring camera to show their use of the area undercuts their assertion that they used the property. At trial, Feeney and Cole explained that, by the time of discovery, the Ring camera company no longer had photographs from the relevant time period.

[9] Cobbins also contests Feeney and Cole's assertion that Mr. Starnes had a conversation with them in 2019 concerning the property. This conversation did not form part of the trial court's determination, and we deem it unnecessary to address the factual disagreement.

Cobbins failed to present clear and convincing evidence that her use of Area #2 satisfied the requirements for common law adverse possession. We affirm the trial court's decision regarding Area #2.

## II. Prescriptive easement

Cobbins argues that she acquired a prescriptive easement over Area #3, the driveway, because she "regularly used [the disputed area] thousands of times over the 20 years" and Feeney and Cole did not object to her use. Cobbins used the driveway (Area #3) for ingress and egress to an area she considered part of her yard.[10]

A prescriptive easement is "an implied easement that is based on the use of the property rather than on the language in a deed." *Manion v. Baldini, Pryor, & Lammert P'ship*, No. M2022-00384-COA-R3-CV, 2023 WL 4581573, at *3 (Tenn. Ct. App. July 18, 2023) (citing *Bradley v. McLeod*, 984 S.W.2d 929, 934-35 (Tenn. Ct. App. 1998)). To establish a prescriptive easement, a claimant must prove that "the use and enjoyment of the property [was] adverse, under a claim of right, continuous, uninterrupted, open, visible, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, and . . . continue[d] for the full prescriptive period," which is 20 years. *Pevear v. Hunt*, 924 S.W.2d 114, 116 (Tenn. Ct. App. 1996). The trial court rejected Cobbins's claim of a prescriptive easement, finding that Cobbins failed to establish that her use was actual and exclusive or adverse or hostile:

> The Court finds that the Plaintiff has failed to establish a claim for prescriptive easement. Not only did Defendants Feeney and Cole testify that they used the driveway consistently, so did the previous owners of their property. Mrs. Frierson testified that she considered the driveway hers; however, all the surrounding neighbors used the driveway at times. Mrs. Frierson knew that the Plaintiff used the driveway and did not have an issue with her use. The Friersons testified that they parked in this driveway, along with everyone else who lived in the surrounding homes. Most notably, at no point did the Friersons believe Plaintiff was asserting any ownership of this driveway.
> Further, even Plaintiff testified that the driveway was "open to everyone to use." "Hostility" or adverse use exists when one "holds the possession as his, against the claims of any other." *Wilson*, 195 S.W.3d at 667 (citing *Hightower*, 662 S.W.2d at 937). The evidence shows that no exclusive and actual, or adverse use was present to sufficiently establish that the Plaintiff was asserting ownership of this area. To the contrary, multiple

---

[10] In her first amended complaint, Cobbins included a request that, if she was not declared the owner of Area #1, the prescriptive easement for the driveway be declared to include "the grass area that Plaintiff has driven over and used for ingress and egress," which is part of Area #1.

individuals were continuously using the area. Based on the evidence presented at trial, the Court finds that the Plaintiff's use was not actual and exclusive, nor was it adverse or hostile. Thus, the Court declines to grant the Plaintiff an easement by prescription.

On appeal, Cobbins argues that the trial court erred in finding that her use was not exclusive. As Cobbins points out, "The use may be exclusive in the required sense even though it is participated in by the owner of the servient tenement or by owners of adjoining land." *House v. Close*, 346 S.W.2d 445, 448 (Tenn. Ct. App. 1961). In this context, "exclusive" means that "the claimant's right does not depend on a similar right in others." *Stone v. Brickey*, 70 S.W.3d 82, 86-87 (Tenn. Ct. App. 2001). So, the fact that others also use the alleged easement does not necessarily mean that the claimant's right was not exclusive.

We have concluded, however, that the trial court correctly found that Cobbins did not prove that her use of the driveway was adverse or hostile. Similarly, Cobbins failed to establish that her use was under a claim of right. This Court has previously provided the following guidance regarding the issue of whether a use is adverse and under a claim of right:

> [T]o be adverse, the use must be under a claim of right inconsistent with or contrary to the interest of the owner and of such a character that it is difficult or impossible to account for it except on the presumption of a grant; or use under a claim of right known to the owner of a servient tenement; or use whenever desired without license, or permission asked, or objection made such as the owner of an easement would make of it, disregarding entirely the claims of the owner of the land.

*House*, 346 S.W.2d at 448 (citing 28 C.J.S. *Easements* § 14). If the property owner expressly or implicitly granted permission "by allowing continued use, or if the owner makes it clear that the use is only with permission, even in the absence of a request, this would strongly indicate that the proponent's use was permissive and not adverse." *Gore v. Stout*, No. M2006-02111-COA-R3-CV, 2008 WL 450597, at *8 (Tenn. Ct. App. Feb. 19, 2008).

The case of *Blakemore v. Matthews*, 285 S.W. 567 (Tenn. 1926), addresses a factual situation similar to the present case. The complainant, Blakemore, asserted the right to use a private road over land belonging to the defendants, the Matthews family. *Blakemore*, 285 S.W. at 567. Blakemore's claim was that he had obtained a prescriptive easement by virtue of his "continuous, open, and adverse possession of said roadway for more than 20 years." *Id.* The chancellor agreed and ruled in favor of Blakemore. *Id.* In reversing the chancellor's decision, the Supreme Court stated:

- 14 -

The complainant's idea seems to be that, where it appears that one has traveled over the private road of another, without objection, for more than 20 years, an indefeasible easement is thereby acquired in said road. Entertaining this idea, the complainant offered no testimony to show that his use of said road was based upon a claim of right, or that he occupied same adversely to the defendants, or that he was in the exclusive possession of said road, or that he notified the defendants, either expressly or impliedly, of his claim of right to use said road. He limited his testimony to the fact that he had been continuously using said road for more than 20 years.

We have been unable to find any decision of this court holding that, in the circumstances of this case, a prescriptive right was acquired, and, upon principle, it seems to us that to so hold would be most unjust and inequitable. It would mean that one who had been kind enough to permit his neighbor, without consideration, to use his private roadway for 20 years would thereby lose his right to withdraw such implied consent where conditions arose making it no longer desirable, and notwithstanding the fact that he was without notice or knowledge that the licensee was claiming any right or interest in such road.

Where persons travel the private road of a neighbor in conjunction with such neighbor and other persons, nothing further appearing, the law will presume that such use was permissive, and the burden is upon the party asserting a prescriptive right to show that his use was under claim of right and adverse to the owner of the land. *Connor v. Frierson*, 98 Tenn. 183, 38 S. W. 1031.

*Id.* at 567-68. Because Blakemore had presented no proof that his use was adverse or under a claim of right but relied solely upon his use of the road for 20 years, the court applied the presumption that, "Where persons travel the private road of a neighbor in conjunction with such neighbor and other persons, *nothing further appearing*, the law will presume that such use was permissive." *Id.* (emphasis added); *see also Nash v. Bryant*, No. 85-310-II, 1986 WL 5547, at *1 (Tenn. Ct. App. May 14, 1986) (stating that, under the rule in *Blakemore*, Tennessee does not recognize a presumption that use for the prescriptive period alone establishes that the use is adverse).

We find the rule stated in *Blakemore* applicable in the present case. Cobbins relies upon her use of the driveway for 20 years without any further proof to establish that her use was adverse or under a claim of right. There is no dispute that others in the neighborhood likewise used the driveway. Under these circumstances, Tennessee law presumes that the use was permissive, and not hostile or adverse. Based upon the evidence, the trial court concluded: "The evidence shows that no exclusive and actual, or adverse use was present to sufficiently establish that the Plaintiff was asserting ownership of this area. To the contrary, multiple individuals were continuously using the area."

The determination of whether a use is adverse or permissive is a question of fact. *Wilson*, 195 S.W.3d at 666. The question of whether a use is made under claim of right is a factual one. *See Thorogood v. D'Alton Props., LLC*, No. E2007-02208-COA-R3-CV, 2009 WL 161048, at *2 (Tenn. Ct. App. Jan. 23, 2009) (holding that the claimants had presented no admissible evidence regarding whether their use was "adverse, under claim of right" and, therefore, there remained issues of material fact for determination). The evidence does not preponderate against the trial court's factual findings or its conclusion that Cobbins failed to establish these elements by clear and convincing evidence.[11]

## III.     Injunctive relief

In her complaint and in her Rule 7 motion, Cobbins also sought injunctive relief based upon a seven-year possessory interest and/or upon her asserted common law adverse possession. We have already found that Cobbins failed to establish common law adverse possession, thus she is not entitled to injunctive relief on that basis.

Cobbins's other claim for injunctive relief is based upon Tenn. Code Ann. § 28-2-103.[12] This statute "protects an adverse holder after a period of seven years but only as to that portion of the land in his actual possession." *Cumulus*, 226 S.W.3d at 376. However, the statute is defensive only and, thus, "may be utilized by the adverse holder only in the defense of a suit and not as a means to bar use by the rightful owner." *Id.* In our case,

---

[11] Cobbins cites *Phillips v. Shrader*, No. E2010-02339-COA-R3-CV, 2011 WL 6235460 (Tenn. Ct. App. Dec. 14, 2011), in support of her argument that her use was not permissive, but rather adverse and hostile. We find *Phillips* readily distinguishable from the present case. In *Phillips*, the court determined that the plaintiff's case for trespass was barred by Tenn. Code Ann. § 28-2-103 based on the defendant's adverse possession. *Phillips*, 2011 WL 6235460, at *1. The defendant's possessory acts included "the use and maintenance of the carport/garage attached to the house, the use of the driveway into the carport/garage, the use of a barbecue pit, the use of a propane tank, and the use of the yard including mowing it and maintaining flowers and shrubs." *Id.* at *5. The fact scenario identified in *Blakemore* (of multiple neighbors using a private road) did not exist. The *Phillips* court concluded that "[t]he record fully supports the finding of the trial court that there was no credible evidence of permissive use." *Id.* at *6.

[12] Tennessee Code Annotated section 28-2-103 states:

> (a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.
> (b) No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located.

Cobbins brought suit for common law adverse possession, and Defendants did not bring an action against her.

Thus, Cobbins's claims for injunctive relief are without merit.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Sylvia Cobbins, for which execution may issue if necessary.

_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE